377 So.2d 308 (1979)
STATE of Louisiana
v.
Ricky CARTHAN.
No. 64604.
Supreme Court of Louisiana.
November 12, 1979.
*310 Russell T. Tritico, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.[*]
Ricky Carthan was indicted by the grand jury for the crime of attempted aggravated rape in violation of La. R.S. 14:42 and La. R.S. 14:27. After trial by jury, defendant was found guilty as charged and sentenced to serve twelve years at hard labor. On appeal, defendant relies on fourteen assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion for a new trial grounded on a claim that the verdict was contrary to the law and evidence. He argues that the state failed to prove his guilt beyond a reasonable doubt.
Our review of the record reveals ample evidence to support the verdict. The victim had known defendant for a number of years; she testified concerning the rape attempt and identified defendant as the perpetrator of the offense. She testified that the attempted rape occurred one afternoon after defendant had taken her riding on his motorcycle and had stopped the motorcycle in a deserted area. Sheriff Deputy Sam Vitello testified that he had observed defendant and the victim as they were riding on a motorcycle in the area named by the victim as the site of the offense. Dr. E. R. Brown, coroner, testified that his examination of the victim led him to conclude that an attempt had been made to have intercourse with the victim anally. Hence, we find substantial evidence from which a jury could have found defendant guilty of the crime charged.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion to suppress the result of medical tests performed on him. He argues that the lab tests violated his fourth and fifth amendment rights.
*311 After learning that the sample of seminal fluid taken from the victim was contaminated with gonorrhea, the coroner ordered that defendant be taken to a local hospital and tested for the presence of gonorrhea. Defendant was incarcerated at the time in the parish prison; two deputies accompanied him to the hospital. The state and defendant stipulated that at no time immediately prior to or during the examination was defendant advised of his right to consult an attorney or of his right to refuse the test.
A blood sample and penile discharge smear were obtained from defendant and tested for the presence of venereal disease. The procedure was conducted by qualified medical personnel. Marlon K. Sonnier, lab technician who performed the tests, testified that his examination of the smear taken from defendant had shown the existence of gonorrhea in the seminal fluid of defendant.

Fourth Amendment Claim
Defendant contends that the testing procedures violated his right to be free from unreasonable searches and seizures. Medical testing procedures of the type conducted here constitute searches of the person. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
Defendant was incarcerated after arrest at the time of the laboratory tests. Probable cause for arrest of defendant clearly existed; he had been visiting the home of the victim on the afternoon of the offense and had taken her for a ride on his motorcycle. Shortly after she returned from the ride, the victim reported to her sister and mother that defendant had sexually assaulted her. She was then taken to the hospital and the police were contacted. At the hospital, a specimen of the fluid found on the victim was taken and prepared for testing. Elizabeth F. Stevens, medical technologist, testified that she cultured the specimen to test for the presence of gonorrhea; the test confirmed the existence of gonorrhea in the sample.
Defendant was arrested that evening. The presence of gonorrhea in the specimen taken from the victim had been confirmed at the time defendant was tested for gonorrhea. Thus, there was more than a mere chance that the desired evidence might be obtained through the use of laboratory tests and these facts constituted a clear indication that in fact such evidence would be found. See Schmerber v. State of California, supra.
There is no claim that the blood sample and penile discharge smear were not obtained in a medically-safe manner. Mr. Sonnier, lab technician, testified that he drew the blood using a sterile technique; that he obtained the smear by touching the tip of the penis to a glass slide and that no force was necessary to collect the smear since defendant was suffering from an excessive discharge. Defendant has not challenged the accuracy of the laboratory tests.
While prisoners are not totally deprived of fourth amendment rights by virtue of their incarceration, a prisoner has a lesser expectation of privacy than an unincarcerated individual. Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); State v. Williams, 375 So.2d 364 (La.1979); State v. Dauzat, 364 So.2d 1000 (La.1978).
Under the circumstances here presented, we do not find that the taking of blood and discharge samples from defendant was unreasonable. Hence, the search of his person was not unconstitutional.
Moreover, the record indicates that defendant consented to the tests. Danny Groves, head trustee of the jail, testified that defendant complained of a burning sensation during urination and a discharge several days before defendant was tested. Groves stated that he removed defendant from his cell at the time of the hospital visit, that he advised defendant that he was being taken to the hospital, and that defendant did not inquire about the purpose of the visit because defendant knew the reason for the visit based on his prior complaints. Although defendant testified at *312 the suppression hearing that he asked for an attorney twice enroute to the hospital and once at the hospital, his testimony was contradicted by the testimony of the lab technician who administered the tests, the nurse who assisted him, and the deputy who transported defendant to the hospital. They testified that defendant did not ask to speak to an attorney. Sonnier, the lab technician, and Mrs. Nedeline Brown, the assisting nurse, testified that, had defendant requested an attorney, they would have halted the medical procedures as required by hospital policy to allow defendant to consult an attorney.
A search conducted with the consent of defendant is one of the exceptions to the warrant requirement of the fourth amendment. Whether the defendant consented is a question of fact to be determined by all of the facts and circumstances of the case; the trial judge's conclusions on credibility are entitled to great weight. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Dunbar, 356 So.2d 956 (La.1978); State v. Tennant, 352 So.2d 629 (La.1977); State v. Schouest, 351 So.2d 462 (La.1977); State v. Temple, 343 So.2d 1024 (La.1977). While knowledge of the right to refuse consent is one factor to be taken into account, it is not determinative of the issue. Schneckloth v. Bustamonte, supra; State v. Dunbar, supra; State v. Temple, supra; State v. Rogers, 324 So.2d 403 (La.1975). The judge denied the motion to suppress on the basis that defendant voluntarily submitted to the tests and found as a fact that defendant did not ask for an attorney prior to the performance of the examination. We are unable to say the trial judge erred in these findings.

Fifth Amendment Claim
Defendant contends that the testing procedure violated his privilege against self-incrimination. This argument is without merit. The privilege protects an accused only from being compelled to testify against himself; as such it applies only to evidence of a testimonial or communicative nature. Schmerber v. State of California, supra; State v. Smith, 359 So.2d 157 (La. 1978); State v. Wilson, 329 So.2d 680 (La. 1976). Testing of bodily evidence, i. e., blood, urine, breath, violates no privilege against self-incrimination. State v. Smith, supra; State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691.
In sum, the trial judge properly denied defendant's motion to suppress the results of the medical tests.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in refusing to allow a challenge for cause of prospective juror John L. Hyde. The challenge was based upon the prior acquaintance between the assistant district attorney, David Burton, who prosecuted the case, and the juror.
On voir dire, Hyde stated that he had known Burton in high school, that he considered him a friend, and that he sees Burton from time to time at social functions. He further stated that, while Burton had never performed any legal work for him, he had employed Burton's law partner on one occasion about a year and a half prior to trial. Hyde also stated that Burton's law partner had done legal work for his father.
Hyde clearly stated that his acquaintance with the prosecuting attorney would not interfere with his being fair and impartial and that he would be guided strictly by the facts of the case. He also stated that, if, at the conclusion of the case, he was not convinced that the state had proven defendant's guilt beyond a reasonable doubt, he would find him not guilty.
The state or defendant may challenge a juror for cause on the ground that the relationship between the juror and the district attorney is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict. La.Code Crim.P. art. 797(3).
*313 We are unable to say that the refusal to excuse this juror for cause was an abuse of discretion granted to the trial judge in determining whether the relationship would influence the juror in arriving at a verdict. State v. Dupuy, 319 So.2d 294 (La.1975); State v. Richmond, 284 So.2d 317 (La.1973).
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 12
Defendant contends the trial judge erred in denying his motion for a new trial grounded on a claim that the state's systematic exclusion of blacks by the use of peremptory challenges over a period of time in Beauregard Parish violated his constitutional rights and in limiting defendant's attempt to show such a systematic exclusion.
The jury that tried defendant, a twenty-year-old black male, was composed of twelve white men and women and one black alternate juror. At the hearing on the motion for a new trial, three attorneys who practiced law in DeRidder, Parish of Beauregard, site of the trial, testified concerning their experiences with criminal jury trials. In total, their testimony related to five criminal jury trials over the past several years involving four black defendants and one white defendant. In all but one of the cases, a black served on the jury either as a juror or as an alternate. The testimony was that a total of seven to ten prospective jurors were peremptorily challenged by the state in the five criminal trials. Defense counsel also testified that in the instant case the state exercised four peremptory challenges against black prospective jurors.
The state and defendant stipulated that, according to the last report from the office of the registrar of voters in December of 1978, there were 12,326 registered white voters and 1,554 registered black voters in Beauregard Parish.
Based on the evidence adduced at the hearing on the motion for a new trial, we find that the defendant has not made a sufficient showing that the state, through the use of peremptory challenges, has prevented blacks from serving on juries over a period of time in Beauregard Parish to establish a prima facie case of such systematic exclusion. State v. Brown, 371 So.2d 751 (La.1979); State v. Bias, 354 So.2d 1330 (La.1978); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
Defendant's contention that the trial judge limited his efforts to establish a record of the state's systematic exclusion of black jurors through the use of peremptory challenges is not supported by the record.
Assignments of Error Nos. 4 and 12 are without merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6
Defendant contends the trial judge erred in refusing to allow defendant to examine a written statement of the victim and in preventing the cross-examination of Deputy Pullin about the content of that statement.
During cross-examination by defendant, Deputy Pullin testified that he had obtained a written statement from the victim. Defendant asked the officer whether, during the interview with the victim, she had claimed to have been raped anally or vaginally. The state objected on the ground of hearsay and defendant's failure to cross-examine the victim, who had testified earlier, concerning a statement to the police. The trial judge sustained the objection. Defendant then moved for production of the victim's statement. The state indicated that the statement contained no material exculpatory to defendant. After taking the matter under advisement, the trial judge denied the motion.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978). Clearly, the question *314 asked of Deputy Pullin called for objectionable hearsay evidence. Secondly, when the victim testified, defendant made no attempt to lay a foundation to impeach her credibility by the use of a prior inconsistent statement as required by La.R.S. 15:493. Finally, statements made by witnesses, other than defendant, to the district attorney or agent of the state are not subject to discovery or inspection except as provided in arts. 716, 718, 721 and 722. La.Code Crim.P. art. 723. None of the exceptions are applicable here except possibly art. 718(1) which provides for production of statements favorable to the defendant and which are material and relevant to the issue of guilt or punishment. In ruling on the motion for a new trial, the trial judge inspected the victim's statement. After concluding that the statement contained neither exculpatory material nor statements inconsistent with those made during the victim's testimony at trial, the trial judge ordered that the statement be sealed and placed in the record to aid this court in its review of defendant's conviction. We have reviewed the statement and find, as did the trial judge, that it is consistent with the victim's testimony at trial and is strictly inculpatory. Since the statement is not favorable to defendant, the trial judge properly denied defendant's request for production of the victim's statement.
Assignments of Error Nos. 5 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends the trial judge erred in overruling his objection to a question asked of the victim by the state on the ground that it was a leading question.
The attempted aggravated rape occurred after defendant stopped his motorcycle, on which he and the victim were riding, in a desolate spot. The victim, who was nine years old at the time of the offense and ten years old at the time of trial, testified in detail about the route taken to where the motorcycle was stopped. She stated that defendant then asked her to permit him to perform anal sex with her. She answered in the negative. The state then asked her several times if he did anything after that. Her response on each occasion was: "I don't know." It seemed that she was unable to go beyond this point. The state then asked: "Did he ask you to pull your pants down?" Defendant's objection to this question on the ground that it was leading was overruled. The victim responded in the affirmative. Once past that point, she had no difficulty answering the remaining questions about the rape attempt. No further objections were made by defendant during the remainder of the victim's testimony on direct examination.
In State v. Francis, 337 So.2d 487 (La. 1976), we stated:
A leading question, one which suggests to the witness the answer he is to deliver, is ordinarily prohibited when propounded to one's own witness, unless such witness be unwilling or hostile. La.R.S. 15:277. The reason for this is the danger that a witness may acquiesce in a false suggestion. However, exceptions to this general rule are recognized:
... Thus, the judge, when need appears, will ordinarily permit leading questions to children, or to witnesses so ignorant, timid, weak-minded, or deficient in the English language, that they cannot otherwise be brought to understand what information is sought. It is recognized, especially as to children, that in these cases the danger of false suggestion is at its highest, but it is better to face that danger than to abandon altogether the effort to bring out what the witness knows ....
McCormick, Evidence, sec. 6 at page 10 (Cleary, 2d ed. 1972).
In State v. Williams, 143 La. 424, 78 So. 662 (1918), this court held that it would not be objectionable to ask leading questions of the twelve-year-old victim of a rape. We stated:
... [T]he rule forbidding leading questions is not so rigid that it should not yield somewhat to the discretion of the trial judge in the examination of a very young or timid witness.

*315 Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Fallon, 290 So.2d 273 (La.1974); State v. Hollingsworth, 160 La. 26, 106 So. 662 (1925).
In the present case, in view of the fact that the witness was only ten years old and only a single leading question was asked her at a point when it was obvious that, because of her timidity and embarrassment concerning the events, she was hesitant to tell what she knew. We cannot say the trial judge abused his discretion in permitting the witness to answer the question.
Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends that the prosecutor improperly referred to defendant's failure to testify in his closing argument in violation of La.Code Crim.P. art. 770(3).
Defendant made no objection to the alleged objectionable remarks either during or after closing argument; therefore, the issue is not preserved for our review. La. Code Crim.P. art. 841; State v. Whitmore, 353 So.2d 1286 (La.1977). We note, however, that the prosecutor's remarks are within the proper bounds of closing argument.
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in overruling his objection to a reference by the prosecutor to a fact outside the record in rebuttal argument to the jury.
The record reflects the following facts. The victim did not testify about the pants defendant was wearing at the time of the offense. Deputy Sam Vitello testified that he had observed defendant and the victim riding a motorcycle on the day of the offense but did not recall what defendant was wearing. Tim Simon, lab technician, testified that a pair of khaki pants belonging to defendant had been submitted to him for testing.
During rebuttal, the prosecutor stated that: "The essential facts are that they were out on Crosby Road that day. The little girl testified he had on jeans. Deputy Vitello testified that he had on blue jeans; dungarees, he testified. He had on khakis when they were submitted to the lab. He went home and changed clothes. That's why he had on khakis when they were submitted to the lab." Defendant objected on the ground that the argument referred to facts outside the record. The trial judge admonished the jury that it was to determine the facts of the case based on the evidence presented.
La.Code Crim.P. art. 774 provides that the argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. It is well settled that, before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Lee, 364 So.2d 1024 (La.1978); State v. Berain, 360 So.2d 822 (La.1978); State v. Crumholt, 357 So.2d 526 (La.1978); State v. Davis, 353 So.2d 275 (La.1977).
Although the prosecutor's statement misstated the testimony concerning the blue jeans worn by defendant, we do not consider, under the circumstances here presented, that the statement influenced the jury and contributed to the verdict. There was no question of identity of defendant as he was known to the victim and her family for many years. Moreover, the trial judge immediately admonished the jury that it was within its sole province to determine the facts. Also, the trial judge in his charge to the jury added that statements made during the attorneys' opening *316 statements and closing arguments did not constitute evidence.
Assignment of Error No. 9 is without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant contends the trial judge erred in refusing to receive a special written charge for the jury submitted by defendant. The requested charge covered the penalty for the crime charged and the responsive verdicts.
There is no merit to this contention. In State v. Blackwell, 298 So.2d 798 (La.1974) (on rehearing), we stated that our law did not require that the judge charge the jury on penalty. Hence, we do not find that the trial judge erred in refusing to instruct the jury on the penalty that would be imposed by the court on the defendant in the event of his conviction of the crime charged or a lesser included offense. State v. Prater, 337 So.2d 1107 (La.1976).
Assignment of Error No. 10 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in considering prejudicial and unsupported facts in the presentence report.
At the sentencing hearing, defendant objected to the court "having taken into consideration apparently the previous arrest of the defendant without any conviction." The trial judge noted that at defendant's request, he furnished him a copy of the presentence report prior to sentencing. The presentence report stated that defendant had one prior arrest on his record for a similar offense but that the charges were dropped at the request of the victim's parents. There is no showing in the record that defendant attempted to rebut any of the information contained in the report. Under the circumstances, we find no merit to defendant's contention that the trial judge considered any prejudicial or unsupported facts in the presentence report.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends the trial judge erred in imposing an excessive sentence on him.
Defendant was sentenced to serve twelve years at hard labor. The maximum penalty which may be imposed for the crime of attempted aggravated rape is fifty years at hard labor. La.R.S. 14:27(D)(1); La.R.S. 14:42. The trial judge stated his reasons for imposing sentence in accordance with the sentencing guidelines set forth in La. Code Crim.P. art. 894.1. The judge indicated that he considered the potential long-range psychological damage to the young victim, a lack of provocation, and the likelihood that defendant might commit a similar crime again in arriving at his determination of the sentence. He considered defendant's youthful age (twenty years) and the fact that defendant had no previous record of criminal convictions as mitigating factors. Under the circumstances, we are unable to say that the sentence imposed on defendant was excessive.
Assignment of Error No. 14 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[*] Chief Judge Paul B. Landry, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of Tate, J. upon this case.
[1] In brief to this court, defendant, specifically abandoned Assignment of Error No. 11.